# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A23-1762

In the Matter of the Welfare of the Children of: L. K. and A. S., Parents.

**Filed June 3, 2024**
**Affirmed in part, reversed in part, and remanded; motion denied**
**Johnson, Judge**
**Concurring in part, dissenting in part, Reyes, Judge**

Martin County District Court
File No. 46-JV-22-32

Mark D. Fiddler, Rachel L. Osband, Delmar Flynn, Fiddler Osband Flynn, L.L.C., Minnetonka, Minnesota; and

Timothy Sandefur (*pro hac vice*), Goldwater Institute, Phoenix, Arizona (for appellants-former foster parents K.R. and N.R.)

Ryan A. Gustafson, Frundt, Lundquist & Gustafson, Ltd., Blue Earth, Minnesota (for respondent L.K.)

Taylor McGowan, Martin County Attorney, Amanda Heinrichs-Milburn, Assistant County Attorney, Fairmont, Minnesota (for respondent Human Services of Faribault & Martin Counties)

Joseph Plumer, Riley Plumer, Plumer Law Office, Bemidji, Minnesota; and

Tammy Swanson, Swanson, Drobnick & Tousey, P.C., Woodbury, Minnesota (for respondent Red Lake Nation)

Jody M. Alholinna, St. Paul, Minnesota (for guardian *ad litem* McKenzie Borth)

Keith Ellison, Attorney General, Liz Kramer, Solicitor General, Kaitrin C. Vohs, Anna Veit-Carter, Assistant Attorneys General, St. Paul, Minnesota (for intervenor State of Minnesota)

Considered and decided by Ross, Presiding Judge; Johnson, Judge; and Reyes, Judge.

**SYLLABUS**

1.      For purposes of a petition for third-party custody, a person is not excluded from the definition of "interested third party" in Minnesota Statutes section 257C.01, subdivision 3 (2022), on the ground that the person is a former foster parent of a child.

2.      The placement preferences in Minnesota Statutes section 260.773, subdivision 3 (Supp. 2023), which favor Indian persons and other placements approved by an Indian tribe, do not violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

**OPINION**

**JOHNSON**, Judge

This appeal concerns two Indian children, twins who now are two years old. Shortly after the children were born, Martin County commenced this child-protection case and placed the children in a foster home. When the children were 17 months old, the county decided to change the foster placement to the home of a relative of the children who lives on the Red Lake reservation and was approved by the Red Lake Nation. The original foster parents moved to stay the change of placement, moved for permissive intervention into the pending child-protection case, and requested a declaration that the Indian Child Welfare Act (ICWA), 25 U.S.C. §§ 1901-1963 (2018), and the Minnesota Indian Family Preservation Act (MIFPA), Minn. Stat. § 260.751-.835 (2022 & Supp. 2023), are unconstitutional. In addition, the original foster parents later filed a petition for third-party custody. The district court denied all relief sought by the original foster parents.

We conclude that the district court erred by denying the original foster parents' motion for permissive intervention by considering factors relevant to the children's placement but not factors relevant to whether the original foster parents should be parties to the child-protection case. We also conclude that the district court erred by dismissing the original foster parents' third-party-custody petition on the ground that they are not interested third parties. We further conclude that the district court did not err by not finding a good-cause exception to the statutory placement preferences in MIFPA. And, finally, we conclude that MIFPA's placement preferences, which favor Indian persons and foster placements approved by an Indian tribe, do not violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Therefore, we affirm in part, reverse in part, and remand for further proceedings on the motion for permissive intervention and the third-party-custody petition.

## FACTS

In April 2022, L.K. gave birth to twins—a boy and a girl. At the time, L.K. was residing in the city of Fairmont in Martin County. L.K. had not sought or received pre-natal care during her pregnancy. While at the hospital, L.K. tested positive for amphetamines, methamphetamines, and opiates. One month earlier, in March 2022, custody of L.K.'s then-two-year-old child had been transferred to a relative.

Both of the children needed medical attention that resulted in extended hospital stays following their births. The boy remained in the hospital while suffering withdrawal symptoms. The girl was not breathing when born but was revived by medical providers and transferred to the neonatal intensive-care unit at the Mayo Clinic in Rochester, where

3

she was placed on a ventilator and put into "medically induced hypothermia cooling" to reduce seizures and protect her brain.

Three days after the children were born, the county, acting through an agency known as Human Services of Faribault and Martin Counties, petitioned for an order adjudicating the children as being in need of protection or services (CHIPS). Within days, the district court filed an order transferring care, custody, and control of the children to the county and granting the county authority to determine an out-of-home placement.

The boy was discharged from the hospital when he was 11 days old and was placed in the home of K.R. and N.R., who are non-Indian licensed foster-care providers. The girl was discharged when she was 37 days old and also was placed in K.R. and N.R.'s home.

The district court's emergency-protective-care order noted that the children are either enrolled or eligible for enrollment with the Red Lake Band of Chippewa Indians, also known as the Red Lake Nation, and that ICWA applies. In mid-May 2022, a representative of the Red Lake Nation filed an affidavit stating that the tribe supports an out-of-home placement.

After their placements, both children required numerous appointments at the Mayo Clinic in Rochester as well as in-home visits from medical professionals. The in-home therapy plan included monthly physical therapy, quarterly occupational therapy, and quarterly early-childhood-specialist services. K.R. and N.R. cared for the children as foster parents for more than a year. K.R. and N.R. stated in an affidavit that the county represented to them that they were the preferred long-term placement for the children.

4

On August 1, 2023, the county informed K.R. and N.R. that the Red Lake Nation had stated a preference that the children be placed with R.F., who is a relative of L.K. R.F. is an enrolled member of the Red Lake Nation, lives on the Red Lake reservation, and has physical and legal custody of the children's older sibling. Throughout August 2023, the county, the Red Lake Nation, the guardian *ad litem*, and K.R. and N.R. engaged in numerous communications concerning a plan to transition the children from K.R. and N.R.'s care to R.F.'s care. The plan called for R.F. to travel with the children's older sibling to Fairmont for two weekend visits in August and September. The plan also called for the children to travel to the Red Lake reservation for a one-week visit in September. Due in part to an illness in R.F.'s home, the transition plan was not implemented.

On September 1, 2023, the Red Lake Nation informed the county, the guardian *ad litem*, and K.R. and N.R. that it wanted the children to be transitioned to R.F.'s care as soon as possible. On September 9, 2023, the county informed K.R. and N.R. that the children would be transferred to R.F.'s care on September 13, 2023.

On September 12, 2023, K.R. and N.R. filed an emergency motion for permissive intervention into the CHIPS case, a stay of the change of placement, a finding that good cause exists to not change the placement despite the expressed preference of the Red Lake Nation, and a declaration that ICWA and MIFPA are unconstitutional.

On September 13, 2023, the district court held a hearing. The district court received oral arguments concerning whether the change of placement should be stayed and deferred other parts of K.R. and N.R.'s motion to a later date. K.R. and N.R. urged the district court to stay the placement on the grounds that the transition plan had not been implemented,

5

that R.F. was unfamiliar with the children's medical needs, that the change of placement would result in the children being further away from L.K., and that L.K. favors continued placement with K.R. and N.R. The county argued that the children could attend their medical appointments while in R.F.'s care and that L.K. had not stated a placement preference on the record. The Red Lake Nation argued that placement of Indian children with relatives generally is preferred and that R.F. was willing and able to take the children to their medical appointments. After a brief recess, the district court orally ruled that the children should immediately go to the Red Lake reservation and that a written order would follow. On September 15, 2023, the district court filed an order in which it denied K.R. and N.R.'s motion to stay the change of placement.

On October 4, 2023, K.R. and N.R. filed an amended motion for permissive intervention and a petition for third-party custody. On the following day, the district court conducted another hearing. The district court gave the non-moving parties an opportunity to file submissions after the hearing date. The guardian *ad litem* and the Red Lake Nation filed motions to dismiss the third-party-custody petition. On October 31, 2023, the district court filed a written order denying the motion for intervention and dismissing the third-party-custody petition. The district court did not rule on K.R. and N.R.'s request for a declaration concerning the constitutionality of ICWA and MIFPA.

K.R. and N.R. appeal.

**ISSUES**

I. Did the district court err by denying appellants' motion for permissive intervention?

II.     Did the district court err by dismissing appellants' third-party-custody petition on the ground that appellants are excluded from the statutory definition of "interested third party" in Minnesota Statutes section 257C.01, subdivision 3(b), because they are former foster parents of the children?

III.     Did the district court err by not finding a good-cause exception pursuant to Minnesota Statutes section 260.773, subdivision 10(2), to the statutory placement preferences in Minnesota Statutes section 260.773, subdivision 3?

IV.     Do the placement preferences in Minnesota Statutes section 260.773, subdivision 3, which favor Indian persons and other placements approved by an Indian tribe, violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution?

## ANALYSIS

It is undisputed that ICWA applies to this case.  For a concise overview of ICWA, we refer to the following summary by the United States Supreme Court:

> In 1978, Congress enacted the Indian Child Welfare Act (ICWA) out of concern that "an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies."  92 Stat. 3069, 25 U.S.C. § 1901(4).  Congress found that many of these children were being "placed in non-Indian foster and adoptive homes and institutions," and that the States had contributed to the problem by "fail[ing] to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families."  §§ 1901(4), (5).  This harmed not only Indian parents and children, but also Indian tribes.  As Congress put it, "there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children."  § 1901(3). . . .

7

The Act thus aims to keep Indian children connected to Indian families. "Indian child" is defined broadly to include not only a child who is "a member of an Indian tribe," but also one who is "eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." § 1903(4). If the Indian child lives on a reservation, ICWA grants the tribal court exclusive jurisdiction over all child custody proceedings, including adoptions and foster care proceedings. § 1911(a). For other Indian children, state and tribal courts exercise concurrent jurisdiction, although the state court is sometimes required to transfer the case to tribal court. § 1911(b). When a state court adjudicates the proceeding, ICWA governs from start to finish. That is true regardless of whether the proceeding is "involuntary" (one to which the parents do not consent) or "voluntary" (one to which they do).

Involuntary proceedings are subject to especially stringent safeguards. *See* 25 C.F.R. § 23.104 (2022); 81 Fed. Reg. 38832-38836 (2016). Any party who initiates an "involuntary proceeding" in state court to place an Indian child in foster care or terminate parental rights must "notify the parent or Indian custodian and the Indian child's tribe." § 1912(a). The parent or custodian and tribe have the right to intervene in the proceedings; the right to request extra time to prepare for the proceedings; the right to "examine all reports or other documents filed with the court"; and, for indigent parents or custodians, the right to court-appointed counsel. §§ 1912(a), (b), (c). The party attempting to terminate parental rights or remove an Indian child from an unsafe environment must first "satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." § 1912(d). Even then, the court cannot order a foster care placement unless it finds "by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." § 1912(e). To terminate parental rights, the court must make the same finding "beyond a reasonable doubt." § 1912(f).

. . . .

ICWA's placement preferences, which apply to all custody proceedings involving Indian children, are hierarchical: State courts may only place the child with someone in a lower-ranked group when there is no available placement in a higher-ranked group. For adoption, "a preference shall be given" to placements with "(1) a member of the child's extended family; (2) other members of the Indian child's tribe; or (3) other Indian families." § 1915(a). For foster care, a preference is given to (1) "the Indian child's extended family"; (2) "a foster home licensed, approved, or specified by the Indian child's tribe"; (3) "an Indian foster home licensed or approved by an authorized non-Indian licensing authority"; and then (4) another institution "approved by an Indian tribe or operated by an Indian organization which has a program suitable to meet the Indian child's needs." § 1915(b). . . . [F]or foster care, institutions run or approved by any tribe outrank placements with unrelated non-Indian families. Courts must adhere to the placement preferences absent "good cause" to depart from them. §§ 1915(a), (b).

*Haaland v. Brackeen*, 143 S. Ct. 1609, 1623-24 (2023).

In Minnesota, a companion statute, MIFPA, was enacted in 1999. 1999 Minn. Laws ch. 139, art. 1, §§ 2-17, at 567-78. Its purposes and scope of application are similar to those of ICWA. *See* Minn. Stat. §§ 260.752, .753 (Supp. 2023). MIFPA is based on the state's acknowledgment that federally recognized Indian tribes are "sovereign political entities" with "inherent sovereign authority to pass their own laws, maintain their own systems of governance, and determine their own jurisdiction." Minn. Stat. § 260.754(a) (Supp. 2023). MIFPA accounts for the exclusive jurisdiction of tribal courts and provides for transfers of child-protection cases to tribal courts. *See* Minn. Stat. § 260.763 (Supp. 2023). MIFPA also contains provisions for both voluntary and involuntary out-of-home

9

placements of Indian children and includes preferences for Indian custodians and tribe-approved placements. *See* Minn. Stat. §§ 260.765, .771, .773 (Supp. 2023).

**I.**

Appellants first argue that the district court erred by denying their motion for permissive intervention.

Appellants seek intervention pursuant to a rule that provides, "Any person may be permitted to intervene as a party if the court finds that such intervention is in the best interests of the child." Minn. R. Juv. Prot. P. 34.02. In general, "permissive intervention should be granted liberally when doing so will advance the best interests of the child." *In re Welfare of Children of M.L.S.*, 964 N.W.2d 441, 452 (Minn. App. 2021). This court applies an abuse-of-discretion standard of review to a district court's denial of a motion for permissive intervention. *Id.* at 451. A district court may abuse its discretion in such a ruling by "making findings unsupported by the evidence or by improperly applying the law." *Id.* (quotation omitted).

In its order denying appellants' motion for permissive intervention, the district court began its discussion as follows:

> The best interests of an Indian child means compliance with the Indian Child Welfare Act and the Minnesota Indian Family Preservation Act. The best interests of an Indian child support the child's sense of belonging to family, extended family and tribe. The best interests of an Indian child are interwoven with the best interests of the Indian child's tribe. Minn. Stat. § 260.755, subd. 2a.

The district court continued by noting that the children "are eligible for membership with Red Lake Nation," that they "are protected by ICWA and MIFPA," that the Red Lake

Nation "approved their placement with the children's aunt," who has custody of an older sibling of the children, that the children are doing well in R.F.'s care, and that "there have been no concerns raised about [R.F.'s] home or ability to care for the children." The district court stated that appellants did not take the children to tribal events and that the Red Lake Nation "does not approve of [appellants] as the children's foster or permanency home." The district court also reasoned that allowing appellants to intervene "would only create an unnecessary delay for the finalization of the children's case."

Appellants contend that the district court erred by assessing "the best interests of the children as it relates to a *permanent placement* instead of assessing the best interests as it relates to *intervention*." Appellants cite *M.L.S.*, in which the appellant made essentially the same argument. 964 N.W.2d at 451-52. In that case, this court noted that rule 34.02 "does not specify what circumstances a district court should consider" but stated that "whatever is considered must be relevant to determining *whether the requested intervention* is in the best interests of the child." *Id.* at 452 (emphasis added). We emphasized that, in ruling on a motion for permissive intervention, a district court should focus on the specific issue of whether it is in a child's best interests for the movant to be a party to the case. *Id.* at 455, 457. We resolved the appellant's argument by reasoning that the district court "misapplied the best-interests test in rule 34.02 by," among other things, "focusing on [the child's] permanent placement, instead of [the child's] best interests on the intervention motion. *Id.* at 457-58. For that and other reasons, we concluded that the district court abused its discretion, and we reversed and remanded. *Id.* at 458-59.

In this case, the district court committed the same error that was committed in *M.L.S.*: considering circumstances relevant to placement but not relevant to intervention. The district court's analysis focused on ICWA and MIFPA and the statutory preferences with respect to the placement of an Indian child. *See* 25 U.S.C. § 1915; Minn. Stat. §§ 260.771, subd. 1b, .773. But ICWA and MIFPA are silent as to whether a non-Indian person may intervene in a state-court CHIPS proceeding involving an Indian child. *Cf.* 25 U.S.C. § 1911(c) (providing that Indian child, Indian child's Indian custodian, and Indian child's tribe have right to intervene in state-court proceeding for foster-care placement of or termination of parental rights to Indian child). The district court continued by stating that the Red Lake Nation had approved of the children's placement with a relative who is a member of the tribe. The district court also discussed both appellants' and R.F.'s suitability for either a foster or permanent placement. In short, the district court focused on the children's placement, not on the advantages and disadvantages that might be realized if appellants were parties to the CHIPS case. Accordingly, the district court committed an error of law when considering appellants' motion, for the same reasons as in *M.L.S. See* 964 N.W.2d at 452-55.[1]

---

[1]Our dissenting colleague commits the same error by dwelling on the placement preferences in ICWA and MIFPA. *See infra* C/D 2-6. Because *M.L.S.* made clear that "whatever is considered must be relevant to determining *whether the requested intervention* is in the best interests of the child," 964 N.W.2d at 452 (emphasis added), and that a district court errs by "focusing on [the child's] permanent placement, instead of [the child's] best interests on the intervention motion, *id.* at 457-58, the placement preferences in ICWA and MIFPA are not relevant to a motion for permissive intervention under rule 34.02.

Furthermore, the *M.L.S.* opinion does not endorse or prescribe *any* statutory factors for determining the best interests of a child on a motion for permissive intervention. *Cf.*

Appellants also contend that the district court erred by not considering the potential benefits of their being parties to the CHIPS case. They assert that they "have the most detailed and in-depth knowledge of the children's medical history—including providers, symptoms, [and] red flags." They further assert that "this knowledge is vital to the best interests of these particular children given their adverse birth experiences, multitude of providers, and, in [the girl's] case, extraordinary medical needs that have historically been addressed by a specialized multidisciplinary team." Appellants' contention is supported by a detailed, 21-page affidavit that they filed in support of their motion, which was uncontradicted. In fact, no other party submitted any evidence into the record of the motion hearing.

Appellants are correct that the district court did not expressly consider the knowledge they possess concerning the children, including their medical histories and health-care needs. The district court did not mention the fact that the children had spent most of their lives in appellants' care, from their discharges from the hospital in April and May 2022 until the change of placement in September 2023, which was only a few weeks

---

*infra* C/D 3-5. The parties to the *M.L.S.* case had agreed that certain statutory factors should apply. 964 N.W.2d at 452 (discussing Minn. Stat. § 260C.212, subd. 2(b)). But this court described the parties' agreement as "problematic," in part because the statutory factors identified by the parties (which are not "best-interests" factors but, rather, "needs of the child" factors) were intended for a different purpose. *Id.* at 452-53 n.6. We "question[ed] the wisdom of using" the statutory factors identified by the parties but, nonetheless, discussed some of them "in the interest of completeness." *Id.* at 452-53 (citing Minn. Stat. § 260C.212, subd. 2(b)). Before concluding, we made clear that the statutory needs-of-the-child factors may be relevant to a motion for permissive intervention only to the extent that they "bear on whether it would be in the child's best interests to grant the intervention motion." *Id.* at 457.

before the October 2023 hearing. The supreme court has recognized that former foster parents' knowledge of a child may be relevant to an intervention motion because they "may have information which can assist a trial court in making its decisions in a CHIPS proceedings." *Valentine v. Lutz*, 512 N.W.2d 868, 871 (Minn. 1994). For that reason, the supreme court stated, "In certain circumstances, it may be appropriate for a trial court to allow [former] foster parents to intervene, either as parties to the action or on a more limited basis." *Id.* By not mentioning appellants' familiarity with the children and their medical histories and health-care needs, the district court did not consider all circumstances relevant to appellants' motion for permissive intervention.

Thus, the district court erred in its analysis of appellants' motion for permissive intervention. Therefore, we remand the motion to the district court for reconsideration.

**II.**

Appellants also argue that the district court erred by granting the guardian *ad litem*'s and the Red Lake Nation's motions to dismiss their third-party-custody petition.

**A.**

A person who is not a parent may seek custody of a child by filing a petition for third-party custody. Minn. Stat. § 257C.03, subds. 1, 2 (2022). To prevail in a third-party-custody proceeding, the petitioner first must prove certain facts to establish that he or she is an "interested third party." *Id.*, subd. 7(a). A petitioner also must persuade the district court that a third-party-custody order would be in the best interests of the child in light of certain statutory factors. *See* Minn. Stat. § 257C.04, subd. 1(a) (2022). A district court "must dismiss" a third-party-custody petition if, after an evidentiary hearing, "the petitioner

14

does not establish at least one of the factors" necessary to establish interested-third-party status or if "placement of the child with the petitioner is not in the best interests of the child." Minn. Stat. § 257C.03, subd. 8(a)(2)-(3); *see also Lewis-Miller v. Ross*, 710 N.W.2d 565, 568-69 (Minn. 2006).

In this case, the guardian *ad litem* and the Red Lake Nation moved to dismiss appellants' third-party-custody petition on the ground that appellants are excluded from the class of persons who may seek third-party custody: interested third parties. The statutory definition of "interested third party" provides that the term "does not include an individual who has a child placed in the individual's care" through a custody consent decree, "a court order or voluntary placement under chapter 260C," or an adoption. Minn. Stat. § 257C.01, subd. 3(b) (2022). The district court reasoned that appellants are not interested third parties because "the children *were placed* with [appellants] as foster parents under Minnesota Statutes chapter 260C." (Emphasis added.)

Appellants contend that the district court erred as a matter of law by misinterpreting and misapplying the statutory definition of the term "interested third party." They contend that the definition excludes a person who *presently* is a foster parent but does *not* exclude a person who *previously* was a foster parent. They contend that the word "has" indicates the present tense, not the past tense. In response, the guardian *ad litem* contends that the statutory definition is ambiguous and, to avoid an "absurd result," should be interpreted to exclude a person who has been a foster parent *at any time*. The Red Lake Nation contends that the phrase "has a child placed" uses the present-perfect tense and, thus, excludes persons who are either former or present foster parents.

15

The parties' arguments require us to interpret the statutory definition of interested third party. A court should begin the task of statutory interpretation by seeking to determine whether the statutory language has a plain meaning based on "the common and ordinary meanings" of the words used. *See State v. Thonesavanh*, 904 N.W.2d 432, 436 (Minn. 2017). If a statute has a plain meaning, we deem the statute unambiguous and apply its plain language. *State v. Irby*, 967 N.W.2d 389, 393-94 (Minn. 2021). But if a statute is "subject to more than one reasonable interpretation" with respect to the issue on appeal, this court deems the statute ambiguous. *Id.* If a statute is ambiguous, "we may apply the canons of construction to resolve the ambiguity." *Thonesavanh*, 904 N.W.2d at 435.

In this case, the statutory language has a plain meaning. The noun clause "an individual who has a child placed in the individual's care," which appears in the exclusion to the statutory definition of interested third party, applies to a person who, at the time a third-party-custody petition is filed or is pending, has a child in his or her home for one of the reasons specified in the statute. The noun clause uses the word "has" in the present tense.[2] It is well established that "different tenses of words in a statute can lead to different meanings" and that "different tenses exist to express differences in the time or duration of

---

[2]The noun clause in the exclusion to the statutory definition does not use the present-perfect tense. *Cf. infra* C/D 7-10. The word "has" and the word "placed," which are not adjacent to each other, do not work together to form a verb phrase. *See The Chicago Manual of Style* §§ 5.103, .104, .132 (17th ed. 2017). The words "an individual" form the noun element of a dependent clause, the word "who" is a relative pronoun that introduces a relative clause, the word "has" is the present-tense form of the infinitive "to have," the words "a child" are the direct object of the verb "has," and the word "placed" is a past participle in an adjectival phrase that modifies the word "child." *See id.* §§ 5.19, .56, .90, .106, .129, .226.

an action." *State v. Schmid*, 859 N.W.2d 816, 820 (Minn. 2015); *see also Housing & Redevelopment Auth. of St. Cloud v. Royston*, 990 N.W.2d 730, 737 (Minn. App. 2023), *rev. denied* (Minn. Aug. 22, 2023). In this case, the use of the present tense indicates that the exclusion applies only to a person who *presently* has a child in his or her care through one of the placements specified in the statute. The exclusion does *not* encompass a person who *previously* had a child in his or her home through such a placement. The exclusion is unambiguous in this respect.

It is undisputed that, when appellants filed their third-party-custody petition, the children were not placed in their home. The children were placed in appellants' home on April 20, 2022, and May 16, 2022, respectively. The children were removed from appellants' home on September 13, 2023, after the district court orally stated during the first hearing that it would deny appellants' motion to stay the change of placement. Appellants filed their third-party-custody petition on October 4, 2023. At all times when the third-party-custody petition was pending, appellants were *former* foster parents of the children. Accordingly, appellants are not within the exclusion to the statutory definition of interested third party. To be clear, this opinion expresses no view as to whether appellants can satisfy the requirements of section 257C.03, subdivision 7(a). That issue must be determined by the district court in the first instance. We conclude merely that appellants are not categorically excluded from the statutory definition of "interested third party."

17

**B.**

The guardian *ad litem* and the county make a second responsive argument: that appellants are not allowed to file a third-party-custody petition in a CHIPS case in which they are not a party. The district court did not dismiss the petition for that reason. But the guardian *ad litem* presented the argument to the district court. Consequently, the guardian *ad litem* may assert the argument as an alternative ground for affirmance. *See Day Masonry v. Independent Sch. Dist. 347*, 781 N.W.2d 321, 331 (Minn. 2010).

We begin with the question whether appellants properly filed their third-party-custody petition in juvenile court. In *Stern v. Stern*, 839 N.W.2d 96 (Minn. App. 2013), the family court dismissed a *de facto*-custody petition on the ground that the petition should have been filed in juvenile court. *Id.* at 98-99. This court affirmed, citing a statute that provides, "The juvenile court has original and exclusive jurisdiction in proceedings concerning any child who is alleged to be in need of protection or services, or neglected and in foster care." *Id.* at 100 (quoting Minn. Stat. § 260C.101, subd. 1 (2012)). Because appellants' third-party-custody petition relates to the children, and because the children are the subjects of a pending CHIPS case, the juvenile court has jurisdiction over appellants' petition. *See In re Welfare of Child of F.J.V.*, No. A21-0522, 2021 WL 4944677, *4 (Minn. App. Oct. 25, 2021) (stating that foster parents' third-party-custody petition was properly filed in juvenile court, citing *Stern*), *rev. denied* (Minn. Nov. 29, 2023), *cert. denied*, 143 S. Ct. 2683 (2023); *see also* Minn. R. Civ. App. P. 136.01, subd. 1(c) (providing that nonprecedential opinions are not binding authority).

18

The question remains whether appellants properly filed their third-party-custody petition in this CHIPS case rather than in a new case. The guardian *ad litem* cites a rule of court providing that a party to a CHIPS case has a right to, among other things, "bring motions before the court." Minn. R. Juv. Prot. P. 32.02. The guardian *ad litem* contends that because a person must be a party to a pending CHIPS case to file a motion, a person must be a party to a pending CHIPS case before filing a third-party-custody petition in that case. The cited rule does not compel such a result. In any event, the rule does not justify the dismissal of a third-party-custody petition with prejudice. If, on remand, the district court determines that appellants' third-party-custody petition should not have been filed in the pending CHIPS case, the district court may direct appellants to file it in a new case.

The guardian *ad litem* also makes another argument in support of the district court's dismissal of appellants' third-party-custody petition: that placement with appellants would not be in the children's best interests. *See* Minn. Stat. §§ 257C.03, subd. 8(a)(3), .04. Again, the district court did not dismiss the petition for that reason, even though the guardian *ad litem* presented the argument to the district court. The district court appropriately did not resolve the argument without an evidentiary hearing. *See Lewis-Miller*, 710 N.W.2d at 568-70 (holding that petitioner is entitled to evidentiary hearing with respect to criteria in section 257C.03, subdivision 7(a)). The issue should be determined in the first instance by the district court. Accordingly, we will not consider for the first time on appeal whether a placement with appellants is in the children's best interests.

Thus, the district court erred by granting the motions to dismiss appellants' third-party-custody petition on the ground that appellants previously were the children's foster

19

parents.  Therefore, we remand the matter to the district court with instructions to reinstate the petition.

## III.

Appellants next argue that the district court erred by not finding a good-cause exception to the statutory placement preferences.

Both ICWA and MIFPA give preferences to certain specified foster placements. ICWA's statutory preference provides:

> In any foster care or preadoptive placement, a preference shall be given, in the absence of good cause to the contrary, to a placement with—
>
> > (i)  a member of the Indian child's extended family;
> >
> > (ii)  a foster home licensed, approved, or specified by the Indian child's tribe;
> >
> > (iii)  an Indian foster home licensed or approved by an authorized non-Indian licensing authority; or
> >
> > (iv)  an institution for children approved by an Indian tribe or operated by an Indian organization which has a program suitable to meet the Indian child's needs.

25 U.S.C. § 1915(b).  A federal regulation defines the circumstances that may constitute "good cause" for an exception to the ICWA statutory preferences:

> A court's determination of good cause to depart from the placement preferences must be made on the record or in writing and should be based on one or more of the following considerations:
>
> > (1)  The request of one or both of the Indian child's parents, if they attest that they have reviewed the placement options, if any, that comply with the order of preference;

(2)     The request of the child, if the child is of sufficient age and capacity to understand the decision that is being made;

(3)     The presence of a sibling attachment that can be maintained only through a particular placement;

(4)     The extraordinary physical, mental, or emotional needs of the Indian child, such as specialized treatment services that may be unavailable in the community where families who meet the placement preferences live;

(5)     The unavailability of a suitable placement after a determination by the court that a diligent search was conducted to find suitable placements meeting the preference criteria, but none has been located. . . .

25 C.F.R. § 23.132(c) (2023).

MIFPA has a similar, but not identical, preference provision:

Preference shall be given, in the absence of good cause to the contrary, to a placement with:

(1)     a noncustodial parent or Indian custodian;

(2)     a member of the child's extended family;

(3)     a foster home licensed, approved, or specified by the Indian child's Tribe;

(4)     an Indian foster home licensed or approved by an authorized non-Indian licensing authority; or

(5)     an institution for children approved by an Indian Tribe or operated by an Indian organization which has a program suitable to meet the Indian child's needs.

Minn. Stat. § 260.773, subd. 3.  MIFPA further provides that a good-cause exception to a preferred placement may be based on any of four grounds:

(i)     the reasonable request of the Indian child's parents, if one or both parents attest that they have reviewed the placement options that comply with the order of placement preferences;

(ii)     the reasonable request of the Indian child if the child is able to understand and comprehend the decision that is being made;

(iii)     the testimony of a qualified expert designated by the child's Tribe and, if necessary, testimony from an expert witness who meets qualifications of section 260.771, subdivision 6, paragraph (d), clause (2), that supports placement outside the order of placement preferences due to extraordinary physical or emotional needs of the child that require highly specialized services; or

(iv)     the testimony by the child-placing agency that a diligent search has been conducted that did not locate any available, suitable families for the child that meet the placement preference criteria.

Minn. Stat. § 260.773, subd. 10(2).

Ordinarily, if both a federal statute and a state statute apply, the federal statute supersedes the state statute. *See* U.S. Const. art. VI, § 2; *Martin ex rel. Hoff v. City of Rochester*, 642 N.W.2d 1, 10-11 (Minn. 2002). But in this situation, ICWA contains a provision directing otherwise:

In any case where State or Federal law applicable to a child custody proceeding under State or Federal law provides a higher standard of protection to the right of the parent or Indian custodian of an Indian child than the rights provided under this subchapter, the State or Federal court shall apply the State or Federal standard.

25 U.S.C. § 1921. At oral argument, the guardian *ad litem* argued that section 1921 requires this court to apply the MIFPA placement preferences, not those of ICWA, and appellants agreed.

Accordingly, we seek to determine whether the district court erred by rejecting appellants' arguments for good-cause exceptions to MIFPA's placement preferences. Because appellants argued that "the required order of placement preferences not be followed," they bore "the burden of establishing by clear and convincing evidence that good cause exists to modify the order of placement preferences." Minn. Stat. § 260.773, subd. 12. We apply an abuse-of-discretion standard of review to a district court's decision concerning the good-cause exception to MIFPA's placement preferences. *See In re Custody of S.E.G.*, 521 N.W.2d 357, 363 (Minn. 1994) (reviewing application of ICWA).

In the district court, appellants sought to establish a good-cause exception to the placement preferences for two reasons: first, L.K.'s request that the children remain with appellants and, second, the children's significant medical needs.

**A.**

In its September 15, 2023, order, the district court rejected appellants' first reason for a good-cause exception by stating:

> As far as the Mother's preference, the Court would have to receive that request directly from the Mother. Even then, as the Court noted during the hearing, it would have to determine whether that request was reasonable. Mother has been minimally involved with this case. Additionally, there is a risk that Mother continues to be under the influence of mood-altering chemicals that can significantly compromise her decision-making capabilities.

23

On appeal, appellants acknowledge that, at the time of the district court's decision, L.K. had not yet filed an affidavit expressing her preference that the children remain placed with appellants. L.K. filed such an affidavit on October 3, 2023, before the district court ruled on the motions concerning permissive intervention and the third-party-custody petition. But when the district court ruled on appellants' motion to stay the change of placement, L.K.'s request had been communicated to the court only in a second-hand manner by appellants, in their 21-page affidavit. That form of evidence does not comply with the statute, which provides that "the reasonable request of the Indian child's parents" may constitute good cause "if one or both parents *attest* that they have reviewed the placement options that comply with the order of placement preferences." *See* Minn. Stat. § 260.773, subd. 10(2)(i) (emphasis added). The word "attest" generally means "[t]o bear witness," to "testify," to "affirm to be true or genuine," or "to authenticate by signing as a witness." *Black's Law Dictionary* 158 (11th ed. 2019). Thus, the statute appears to require that the parent submit his or her request to the district court in testimony or a sworn statement. Accordingly, the district court did not abuse its discretion by discounting or disregarding the evidence of L.K.'s request on the ground that she had not submitted it directly to the court.

Appellants also contend that the district court erred by reasoning that L.K.'s request might not be reasonable because she had been "minimally involved" with the CHIPS case and might be under the influence of mood-altering chemicals. Appellants contend that L.K.'s suitability to be a custodial parent is not necessarily relevant to her ability to assert a reasonable request for a good-cause exception. Appellants also refer to a statute that

provides, "If the child's birth parent explicitly requests that a specific relative not be considered for placement of the child, the court shall honor that request if it is consistent with the best interests of the child . . . ." *See* Minn. Stat. § 260C.193, subd. 3(e) (2022). But that statute must yield to MIFPA, which is the more-specific statute for purposes of this case. *See Connexus Energy v. Commissioner of Revenue*, 868 N.W.2d 234, 242 (Minn. 2015). In any event, both of appellants' contentions concerning the reasonableness of L.K.'s request are moot in light of the fact that L.K. did not express her request to the district court in the proper form.

### B.

The district court rejected appellants' second reason for a good-cause exception— the children's medical needs—by stating, "There is no evidence that the relative placement will not be able to meet the children's physical or emotional needs." On appeal, appellants allude to the children's medical histories and the importance of continuity of care.

In response, the guardian *ad litem* and the Red Lake Nation argue that the relevant MIFPA exception requires "the testimony of a qualified expert designated by the child's Tribe and, if necessary, testimony from an expert witness" with certain qualifications. *See* Minn. Stat. § 260.773, subd. 10(2)(iii). Appellants do not attempt to rebut that argument in their reply brief. Appellants submitted a letter from a physician urging continuity of medical care, but the physician did not take a position as to whether the children should be placed with appellants or with R.F. In any event, the physician's letter does not satisfy the requirements of the statute. *See id.*

25

Thus, the district court did not err by rejecting appellants' arguments for a good-cause exception to MIFPA's placement preferences.

## IV.

Appellants last argue that ICWA's and MIFPA's placement preferences violate their federal constitutional right to the equal protection of the laws on the ground that the placement preferences are impermissibly based on race.

Appellants challenged the constitutionality of ICWA and MIFPA in the district court in the motion they filed on September 12, 2023. They sought declarations that both statutes are unconstitutional and provided approximately ten pages of briefing on the issue in a memorandum of law. At the same time, appellants gave notice of their constitutional challenges to the attorney general of Minnesota and the United States Attorney General. The district court did not receive any other briefing on the constitutional issues before filing its September 15, 2023 order denying appellants' motion to stay the change of placement. The district court did not expressly consider appellants' constitutional challenges in its September 15, 2023 order. But the district court applied MIFPA's placement preferences.

Before considering the merits of appellants' constitutional challenges, we address two threshold issues.

## A.

In their respective responsive briefs, the guardian *ad litem* and the Red Lake Nation argue that appellants' constitutional challenges are not properly before this court because the district court did not rule on the issue.

The supreme court has stated, "A reviewing court must generally consider 'only those issues that the record shows were presented and considered by the trial court in deciding the matter before it.'" *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (quoting *Thayer v. American Fin. Advisers, Inc.*, 322 N.W.2d 599, 604 (Minn. 1982)). This statement often has been cited for the proposition that a party has forfeited an argument for reversal if the party did not present the argument to the district court. *See Bedner v. Bedner*, 946 N.W.2d 921, 926 (Minn. App. 2020); *Bremer Bank, N.A. v. Matejcek*, 916 N.W.2d 688, 695 (Minn. App. 2018); *Doe 175 ex rel. Doe 175 v. Columbia Heights Sch. Dist., ISD No. 13*, 842 N.W.2d 38, 42-43 (Minn. App. 2014).

In this case, however, appellants *did* present their constitutional argument to the district court. They did so in a thorough manner by filing a motion seeking, among other things, a declaration that MIFPA "is unconstitutional under the 14th Amendment's Equal Protection clause" and by filing a memorandum of law with legal argument. Appellants also gave proper notice to the attorney general of their constitutional challenge. No party has asserted that appellants should have done more to obtain a ruling from the district court on MIFPA's constitutionality. In similar circumstances, this court has considered an appellant's argument for reversal or has remanded it to the district court, without declaring a forfeiture. *See, e.g.*, *Gallaher v. Titler*, 812 N.W.2d 897, 901 (Minn. App. 2012), *rev. denied* (Minn. July 17, 2012); *Slindee v. Fritch Invs., LLC*, 760 N.W.2d 903, 911 (Minn. App. 2009); *Cederberg v. City of Inver Grove Heights*, 686 N.W.2d 853, 858 (Minn. App. 2004).

Even if the lack of a district court ruling is deemed a forfeiture, appellants' constitutional argument should be reviewed under the well-established exception that applies if an argument could be decisive of the controversy on the merits, if the facts are undisputed, and if "there is no possible advantage or disadvantage to either party in not having had a prior ruling by the trial court on the question." *Watson v. United Servs. Auto. Ass'n*, 566 N.W.2d 683, 687 (Minn. 1997) (quotation omitted); *see also Oanes v. Allstate Ins. Co.*, 617 N.W.2d 401, 403 (Minn. 2000); *Zip Sort, Inc. v. Commissioner of Revenue*, 567 N.W.2d 34, 39 n.9 (Minn. 1997). This court has relied on this exception in prior cases in which an appellant presented an argument to a district court but the district court did not rule on it. *See SCI Minnesota Funeral Servs., Inc. v. Washburn-McReavy Funeral Corp.*, 779 N.W.2d 865, 872-73 (Minn. App. 2010); *Singelman v. St. Francis Med. Ctr.*, 777 N.W.2d 540, 543 (Minn. App. 2010).

There are especially strong reasons to invoke the exception in this case. The factual record is sufficiently developed for purposes of analyzing the constitutional issues. Respondents elected to not file memoranda of law, even during the three-week period preceding the second hearing, during which time appellants' request for declaratory relief was pending. Respondents' decision to not brief the issue to the district court should not be allowed to frustrate appellants' pursuit of their constitutional challenges. If we were to remand the constitutional issue to the district court, this court would apply a *de novo* standard of review on a subsequent appeal. Also, a remand and subsequent appeal would prolong a resolution of the constitutional issue by at least several months, which might delay a permanent placement.

28

Thus, appellants' constitutional challenges are properly before the court.[3]

**B.**

The Red Lake Nation also argues (for the first time on appeal) that appellants lack standing to challenge the constitutionality of ICWA and MIFPA on the ground that appellants did not suffer a legally cognizable injury when the district court applied MIFPA's placement preferences and denied their motion to stay the change of placement.

"Standing is a legal requirement that a party have a sufficient stake in a justiciable controversy to seek relief from a court." *McCaughtry v. City of Red Wing*, 808 N.W.2d 331, 338 (Minn. 2011) (quotation omitted). "Standing to bring an action can be conferred in two ways: either the plaintiff has suffered some injury-in-fact or the plaintiff is the beneficiary of some legislative enactment granting standing." *In re Custody of D.T.R.*, 796 N.W.2d 509, 512 (Minn. 2011) (quotation omitted).

In their reply brief, appellants respond to the Red Lake Nation by arguing that their injury-in-fact has been recognized by the United States Supreme Court. In *Brackeen*, the petitioners asserted a constitutional argument that is practically identical to appellants' constitutional argument: that the application of ICWA's placement preferences violates the constitutional right to equal protection. 143 S. Ct. at 1625-26. In describing that argument, the Court stated:

---

[3] Before the briefing period, the Red Lake Nation filed a motion to limit the scope of this appeal by striking appellants' constitutional challenges on the ground that the district court did not rule on the issue. A ruling on the motion was deferred, and the motion was referred to the merits panel. For the reasons stated in IV.A., we deny the motion.

The individual petitioners argue that ICWA injures them by placing them on "[un]equal footing" with Indian parents who seek to adopt or foster an Indian child. Under ICWA's hierarchy of preferences, non-Indian parents are generally last in line for potential placements. According to petitioners, this "erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group." *The racial discrimination they allege counts as an Article III injury*.

*Id.* at 1638 (alteration in original) (emphasis added) (citations omitted). Despite concluding that the petitioners in *Brackeen* had suffered the requisite injury, the Court did not consider and resolve the constitutional issue because the petitioners did not sue a defendant who could implement any relief that might be granted to them, which meant that the petitioners did not satisfy the redressability requirement. *Id.* at 1638-40.

In this case, appellants are asserting a right based on federal constitutional law. The United States Supreme Court has clearly stated, as a matter of federal law, that their injury satisfies the injury-in-fact requirement. *Id.* at 1638. The nature of the alleged injury is "racial discrimination." *See id.* The petitioners in *Brackeen* asserted an equal-protection challenge to ICWA with respect to both foster placements and adoptive placements. *See id.* at 1625-26, 1638. *Brackeen* governs with respect to whether appellants have satisfied the injury-in-fact requirement.

Thus, appellants have standing to challenge the constitutionality of ICWA and MIFPA.

## C.

Appellants argue that ICWA violates the equal-protection principle of the Fifth Amendment to the United States Constitution, and that MIFPA violates the Equal

Protection Clause of the Fourteenth Amendment, on the ground that the statutes' placement preferences discriminate against foster parents and against children based on race. For purposes of this case, we need consider only the challenge to MIFPA because the district court relied on MIFPA's placement preferences in denying appellants' motion to stay the change of placement.[4] *See supra* part III.

**1.**

The Fourteenth Amendment provides, in relevant part, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It is an elementary principle of constitutional law that the Equal Protection Clause of the Fourteenth Amendment seeks to ensure that states do not treat people differently based on their race. *See, e.g.*, *Brown v. Board of Educ.*, 347 U.S. 483 (1954); *Washington v. Davis*, 426 U.S. 229, 239 (1976).

The Minnesota Supreme Court has prescribed a structure for analyzing equal-protection arguments. The "threshold inquiry is whether the claimant is similarly situated in all relevant respects to others whom the claimant contends are being treated differently." *State v. Lee*, 976 N.W.2d 120, 125-26 (Minn. 2022). We conduct the threshold inquiry "by determining 'whether the law creates distinct classes within a broader group of similarly situated persons or whether those treated differently by the law are sufficiently dissimilar

---

[4]In addition, we question whether a state court may declare an act of Congress invalid on the ground that it violates the United States Constitution. To our knowledge, the power of judicial review established in *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 173-80 (1803), has not been extended to state courts. No party has cited caselaw recognizing such a power in a state court, and we are unable in our independent research to find authority for such a power.

31

from others such that the law does not create different classes within a group of similarly situated persons.'" *Id*. at 126 (quoting *Fletcher Props., Inc. v. City of Minneapolis*, 947 N.W.2d 1, 22 (Minn. 2020)).

If an equal-protection argument "crosses the 'similarly situated' threshold," the next question is whether a person's "right to equal protection has been violated." *Id.* at 129. To answer that question, we must determine the level of scrutiny that should be applied to the equal-protection argument, which "depends on the nature of the challenged statute." *Id.* "If the statute involves a fundamental right or a suspect classification, then we apply a heightened level of scrutiny." *Id.* The federal strict-scrutiny test asks whether a racial classification is narrowly tailored to further a compelling governmental interest. *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995). If the challenged statute does *not* involve a fundamental right or a suspect classification, "we review whether the challenged statute has a rational basis." *Lee*, 976 N.W.2d at 129. The federal rational-basis test asks whether there is a legitimate governmental interest and whether the challenged classification is rationally related to the legitimate governmental interest. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 83-84 (2000).

The parties to this appeal do not address the "threshold inquiry," *i.e.*, whether non-Indian children or non-Indian candidates for foster placements are similarly situated in all relevant respects to Indian children or Indian candidates for foster placements. *See Lee*, 976 N.W.2d at 125-26. Rather, the parties focus their arguments on the level of scrutiny that should be applied to appellants' constitutional argument. Accordingly, we assume without deciding that appellants have satisfied the threshold inquiry, and we proceed to the

next step of the constitutional analysis. We are mindful that our statutes are presumed to be constitutional, and "we will strike down a statute as unconstitutional only if absolutely necessary." *Id.* at 125 (quotation omitted).

**2.**

Appellants contend that MIFPA imposes placement preferences based on race, which is a suspect classification that is subject to strict scrutiny. Appellants further contend that strict scrutiny of MIFPA leads to the conclusion that the statute's placement preferences violate the Equal Protection Clause.

In response, the state attorney general—who was granted leave to intervene for purposes of defending the constitutionality of MIFPA—contends that MIFPA imposes placement preferences that are political in nature rather than racial, that such a distinction is *not* a suspect classification, and that rational-basis scrutiny applies. The attorney general further contends that applying the rational-basis test leads to the conclusion that the statute's placement preferences do *not* violate the Equal Protection Clause. The Red Lake Nation makes essentially the same argument. The other respondents—the guardian *ad litem*, the county, and L.K.—simply join in the attorney general's argument on this issue.

In support of appellants' argument for strict scrutiny, they cite *Palmore v. Sidoti*, 466 U.S. 429 (1984), in which the Supreme Court held that a state court may not award custody to one parent on the ground that the other parent is cohabitating with a person of a different race. *Id.* at 431-34. The *Palmore* Court noted that the state trial court made a classification based on race rather than the best interests of the child. *Id.* at 432-33. The Court reasoned that racial classifications are "subject to the most exacting scrutiny" and

that the state court's custody award did not survive that level of scrutiny. *Id.* at 432-34. Appellants also cite *Loving v. Virginia*, 388 U.S. 1 (1967), for the proposition that a statute is race-based if it defines a person by the quantum of blood attributable to a particular racial group. *Id.* at 4-5 & n.4. The attorney general acknowledges the existence of caselaw aligning with appellants' argument, noting that the Supreme Court has "appl[ied] heightened scrutiny to laws or policies that benefit Native Americans as a minority race." *See, e.g.*, *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 143 S. Ct. 2141, 2166 (2023) (applying strict scrutiny to university admissions program); *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 478 (1989) (applying strict scrutiny to municipal law concerning government contracts).

But the attorney general contends that the Supreme Court also has "appl[ied] rational-basis review to laws or policies that benefit members of a federally-recognized Indian tribe." The attorney general relies primarily on *Morton v. Mancari*, 417 U.S. 535 (1974), in which non-Indian employees of the United States Bureau of Indian Affairs challenged an executive-branch policy that granted "qualified Indians" a preference in hiring. *Id.* at 538-39. At the outset of its analysis, the Court stated that "the instant issue turns on the unique legal status of Indian tribes under federal law." *Id.* at 551. The Court noted that article I of the Constitution grants to Congress the power to regulate "Commerce . . . with the Indian Tribes" and that article II grants the President authority to make treaties with Indian tribes. *Id.* at 552 (citing U.S. Const. art. I, § 8, cl. 3; art. II, § 2, cl. 2). The Court then reasoned as follows:

> [T]his preference does not constitute "racial discrimination." Indeed, it is not even a "racial" preference. Rather, it is an employment criterion reasonably designed to further the cause of Indian self-government and to make the BIA more responsive to the needs of its constituent groups. It is directed to participation by the governed in the governing agency. . . . The preference, as applied, is granted to Indians not as a discrete racial group, but, rather, as members of quasi-sovereign tribal entities whose lives and activities are governed by the BIA in a unique fashion. . . . In the sense that there is no other group of people favored in this manner, the legal status of the BIA is truly *sui generis*.

*Id.* at 553-54. The Court concluded that "the preference is reasonably and directly related to a legitimate, nonracially based goal." *Id.* at 554. Consequently, the Court held that the hiring preference was not unconstitutional. *Id.* at 554-55.

The Supreme Court has cited *Mancari* in other cases concerning equal-protection challenges to statutes concerning Indians and has applied rational-basis review on the ground that the statutes are not based on race. For example, in *United States v. Antelope*, 430 U.S. 641 (1977), the Court applied federal criminal law to Indians charged with crimes against non-Indians in Indian country. *Id.* at 646-47. The Court reasoned that the application of federal law is "not based upon impermissible classifications" but, rather, "is rooted in the unique status of Indians as 'a separate people' with their own political institutions" and, thus, "is not to be viewed as legislation of a 'racial group consisting of Indians.'" *Id.* (quoting *Mancari*, 417 U.S. at 553 n.24). To reinforce the point, the Court stated that the criminal defendants "were not subjected to federal criminal jurisdiction because they are of the Indian race but because they are enrolled members of the Coeur d'Alene Tribe." *Id.* For that reason, the Court concluded "that the federal criminal statutes

35

enforced here are based neither in whole nor in part upon impermissible racial classifications." *Id.* at 647; *see also Moe v. Confederated Salish & Kootenai Tribes of Flathead Reservation*, 425 U.S. 463, 479-80 (1976) (rejecting equal-protection challenge to federal law preventing state from taxing sales of cigarettes on Indian reservation, citing *Mancari*).

The Court also has cited *Mancari* in a family-law case. In *Fisher v. District Court of Sixteenth Judicial District of Montana*, 424 U.S. 382 (1976), the Court's primary holding was that, as a statutory matter, a tribal court had exclusive jurisdiction over an adoption case in which all parties were members of an Indian tribe. *Id.* at 383-91. Before concluding, the Court stated:

> Finally, we reject the argument that denying the [prospective adoptive parents] access to the Montana courts constitutes impermissible racial discrimination. *The exclusive jurisdiction of the Tribal Court does not derive from the race of the plaintiff but rather from the quasi-sovereign status of the Northern Cheyenne Tribe under federal law.* Moreover, even if a jurisdictional holding occasionally results in denying an Indian plaintiff a forum to which a non-Indian has access, such disparate treatment of the Indian is justified because it is intended to benefit the class of which he is a member by furthering the congressional policy of Indian self-government. *Morton v. Mancari*, 417 U.S. 535, 551-55 (1974).

*Id.* at 390-91 (emphasis added).

The question remains whether MIFPA is like the statutes in the cases cited by appellants, in which preferences benefitting Indians and other groups have been reviewed with strict scrutiny, or like the statutes in the cases cited by the attorney general, which

36

were reviewed only for a rational basis. It is notable that MIFPA contains the following legislative statement of policy:

> The purposes of the Minnesota Indian Family Preservation Act are to (1) protect the long-term interests, as defined by the Tribes, of Indian children, their families as defined by law or custom, and the child's Tribe; and (2) preserve the Indian family and Tribal identity, including an understanding that Indian children are damaged if family and child Tribal identity and contact are denied. Indian children are the future of the Tribes and are vital to their very existence.

Minn. Stat. § 260.753. In addition, the manner in which the statute operates shows that it is designed to serve the interests of Indian tribes. The third placement preference is "a foster home *licensed, approved, or specified by the Indian child's Tribe*," and the fifth placement preference is "an institution for children *approved by an Indian Tribe* or operated by an Indian organization which has a program suitable to meet the Indian child's needs." Minn. Stat. § 260.773, subd. 3(3), (5) (emphasis added). The statutory order of preferences yields to an Indian tribe's preferences "if the Indian child's Tribe has established a different order of placement preference by resolution." *Id.*, subd. 2. The statute generally provides that a county "shall defer to the judgment of the Indian child's Tribe as to the suitability of a placement." *Id.*, subd. 5. These provisions demonstrate that MIFPA benefits both Indian persons and Indian tribes.

Furthermore, MIFPA's placement preferences must be understood in the context of ICWA provisions that grant tribal courts "jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe" and require a state court to transfer jurisdiction over such a case

37

to a tribal court. *See* 25 U.S.C. § 1911(a), (b); *see also* Minn. Stat. § 260.763, subd. 1(a). In essence, MIFPA's provisions granting Indian tribes authority to determine or influence the placement of an Indian child in a state-court proceeding are complementary of ICWA provisions concerning tribal-court jurisdiction.

The conclusion that rational-basis review applies is consistent with other Minnesota opinions that have followed Supreme Court precedent by reasoning that statutes that affect Indians differently from non-Indians are not race-based and, thus, are subject to rational-basis review. *See Greene v. Commissioner of Minnesota Dep't of Human Servs.*, 755 N.W.2d 713, 724-29 (Minn. 2008) (concluding that rational-basis review applies to equal-protection challenge to statute reducing government benefits for Indians who do not participate in tribal program); *Krueth v. Independent Sch. Dist. No. 38*, 496 N.W.2d 829, 835-37 (Minn. App. 1993) (concluding that rational-basis review applies to equal-protection challenge to statute allowing school districts to give hiring preferences to American Indian teachers), *rev. denied* (Minn. Apr. 20, 1993).

Thus, MIFPA's placement preferences are not based on race. Rather, they are based on membership in an Indian tribe and on the sovereign or quasi-sovereign status of Indian tribes. *See Fisher*, 424 U.S. at 390-91 (citing *Mancari*, 417 U.S. at 551-55); Minn. Stat. § 260.754. Because MIFPA's placement preferences are not based on a suspect classification, rational-basis scrutiny applies.

**3.**

As stated above, the federal rational-basis test asks whether there is a legitimate governmental interest and whether the challenged classification is rationally related to the legitimate governmental interest. *Kimel*, 528 U.S. at 83-84.

Appellants do not attempt to argue that MIFPA's placement preferences do not satisfy rational-basis review. The Red Lake Nation argues that ICWA is rational by pointing to its text, which "declares that it is the policy of this Nation to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families." 25 U.S.C. § 1902. MIFPA contains a similar provision, which states that its purposes are to

> (1) protect the long-term interests, as defined by the Tribes, of Indian children, their families as defined by law or custom, and the child's Tribe; and (2) preserve the Indian family and Tribal identity, including an understanding that Indian children are damaged if family and child Tribal identity and contact are denied. Indian children are the future of the Tribes and are vital to their very existence.

Minn. Stat. § 260.753. The attorney general argues that MIFPA's placement preferences promote MIFPA's purpose because the preferences "protect Indian children's connections to their immediate families, extended families, and Tribes" and, thus, are "a reasonable solution to promote the legitimate State interest in preventing the breakup of Indian families." We agree. Accordingly, we conclude that MIFPA is rationally related to a legitimate governmental interest.

Thus, MIFPA's placement preferences do not violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

**DECISION**

The district court erred by denying appellants' motion for permissive intervention. On remand, the district court shall reconsider the motion in a manner consistent with part I of this opinion.

The district court erred by granting the motions to dismiss appellants' third-party-custody petition. On remand, the district court shall reinstate the petition.

The district court did not err by not finding a good-cause exception pursuant to Minnesota Statutes section 260.773, subdivision 10(2), to the statutory placement preferences in Minnesota Statutes section 260.773, subdivision 3.

The placement preferences in Minnesota Statutes section 260.773, subdivision 3, do not violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

**Affirmed in part, reversed in part, and remanded; motion denied.**

**REYES**, Judge (concurring in part, dissenting in part)

I concur with the majority's conclusion that no good-cause exception exists to deviate from the placement order established under the Indian Child Welfare Act (ICWA), 25 U.S.C. §§ 1901-1963 (2018) and the Minnesota Indian Family Preservation Act (MIFPA), Minn. Stat. §§ 260.751-.835 (2022 & Supp. 2023) and that MIFPA is constitutional under the rational-basis test. I respectfully dissent on the remaining issues.

This case concerns twin Indian children[1] who are eligible for enrollment in the Miskwaagamiiwi-Zaagaiganing, or Red Lake Nation, a federally recognized Indian Tribe, and whose custodial placement is governed by ICWA and MIFPA. Respondent Human Services of Faribault and Martin Counties (the county) initially placed the children with appellants N.R. and K.R. after filing a Children in Need of Protection or Services (CHIPS) proceeding against the Indian children's birthmother, L.K. Appellants are the Indian children's former foster parents who are non-Indian and not related to the Indian children. By all accounts, appellants did a commendable job of caring and providing for the Indian children. Meanwhile, the county coordinated with the new Red Lake Nation representative to find an appropriate relative placement consistent with ICWA. In August 2023, appellants were informed that the county would follow respondent Red Lake Nation's request under ICWA and MIFPA to have the Indian children placed with R.F. R.F. is the children's relative, the legal guardian of the Indian children's sibling, a member of Red Lake Nation who lives on the Tribe's reservation, and is a licensed foster-care provider.

---

[1] The children satisfy the definition for "Indian child" established by ICWA and MIFPA. *See* 25 U.S.C. § 1903(4); Minn. Stat. § 260.755, subd. 8 (2022).

Appellants responded by filing an emergency motion for permissive intervention in the CHIPS proceeding, a petition to establish third-party custody under the theory that they are interested third parties to the CHIPS proceeding, and a motion challenging the constitutionality of both ICWA and MIFPA. The county, Red Lake Nation, and respondent the guardian ad litem (GAL) for the children, all opposed appellants' motions. On appeal, intervenor State of Minnesota opposes appellants' constitutional challenge to ICWA and MIFPA, and is joined by the county and L.K. The district court did not rule on appellants' constitutional challenges and denied each of their remaining requests.

## I. The district court did not clearly abuse its discretion by denying appellants' motion for permissive intervention because it appropriately applied ICWA and MIFPA to this preadoptive CHIPS proceeding involving Indian children.

Appellants argue that the district court abused its discretion by denying their motion for permissive intervention in the CHIPS proceeding. Red Lake Nation asserts that the district court appropriately exercised its discretion by applying ICWA and MIFPA to a CHIPS proceeding involving Indian children. I agree with Red Lake Nation.

Appellate courts will reverse a district court's decision to deny permissive intervention "only when a *clear* abuse of discretion is shown." *In re Welfare of Child. of M.L.S.*, 964 N.W.2d 441, 451 (Minn. App. 2021) (emphasis added). "A district court abuses its discretion by making findings of fact that are unsupported by the evidence, misapplying the law, or delivering a decision that is against logic and the facts on record." *Woolsey v. Woolsey*, 975 N.W.2d 502, 506 (Minn. 2022) (quotation omitted). While in general permissive intervention is liberally granted, the district court must evaluate the best interests of the children and focus on who should participate in the case. *M.L.S.*, 964

N.W.2d at 451-53. We concluded that "[r]elevant circumstances [to evaluate a motion for permissive intervention] may include, among other things, the *movant's status as a relative*, the timeliness of the motion,[2] and any [factors] in Minn. Stat. § 260C.212, subd. 2(b) [2020], that bear on whether it would be in the child's best interests to grant the intervention motion." *Id.* at 457 (emphasis added).

Appellants' reliance on *M.L.S.* to argue that the district court abused its discretion here is misguided because *M.L.S.* is both factually and legally inapposite. In *M.L.S.*, relative-aunt moved for permissive intervention in an adoption proceeding involving a non-Indian child. *Id.* at 447. We concluded that the district court abused its discretion by denying aunt's motion because (1) aunt's status as a relative under Minn. Stat. § 260C.212, subd. 2(a)(1) (2020), weighed heavily in favor of adding her as a party in the adoption proceeding, especially when the district court's prior order found that no relative-placement options existed, and the child was placed with a nonrelative foster family and (2) it misapplied the factors in Minn. Stat. § 260C.212, subd. 2(b), by conflating the child's best interests in their final placement with their interests in aunt's motion to intervene. *See id.* at 452, 457-58.

As the district court correctly recognized, because this case involves *Indian children*, the Minnesota Rules of Juvenile Protection Procedure require the application of ICWA, which sets forth a unique framework that supplants conflicting state law provisions, including that "the best interests of the child shall be determined consistent with [ICWA]."

---

[2] While timeliness was an important consideration in *M.L.S.*, it is not at issue here.

*See* Minn. R. Juv. Prot. P. 28.05, 28.01 ("This section of these rules provides procedures for the application of ICWA . . . in juvenile protection matters concerning an Indian child."); Minn. Stat. § 257C.02 (2022) (noting that ICWA and MIFPA govern all de facto or third-party custody proceedings involving Indian children). The adoption proceeding in *M.L.S.* did not involve an Indian child and therefore did not invoke ICWA. Minn. Stat. § 260C.212 (2022) expressly incorporates ICWA and requires a different analytical framework to determine the best interests of an Indian child, rendering *M.L.S.* inapposite to this case. Specifically, section 260C.212, subdivision 2(a), has a separate provision for Indian children, which states that "*For an Indian child*, the agency *shall* follow the order of placement preferences in the Indian Child Welfare Act of 1978, United States Code, title 25, section 1915." (Emphases added.); *see also* Minn. R. Juv. Prot. P. 28.04, subd. 5 (stating that "The [district] court shall follow the order of placement preferences required by ICWA, 25 U.S.C. section 1915, when placing an Indian child," and noting that Minnesota courts are required to apply higher standard under MIFPA in order to deviate from ICWA's order of placement). The best interests of Indian children must therefore be determined consistent with ICWA. *See* Minn. R. Juv. Prot. P. 28.05; Minn. Stat. § 260.755, subd. 2a (2022) (defining "[b]est interests of an Indian child" to mean compliance with ICWA and MIFPA "to preserve and maintain an Indian child's family").

Section 1915 of ICWA provides that "[i]n any . . . preadoptive placement, a preference shall be given, in the absence of good cause to the contrary,[3] to a placement

---

[3] The good-cause exception to ICWA will be discussed briefly in section III. In short, I agree with the majority's analysis of that issue.

with—(i) a member of the Indian child's extended family." 25 U.S.C. § 1915(a). The parties do not dispute that CHIPS actions are preadoptive proceedings that seek to reunite parents with their children, Minn. Stat. § 260C.001, subd. 2(b)(7) (2022); that the Indian children's relative, R.F., is "a member of the Indian child[ren]'s extended family"; or that compliance with ICWA and MIFPA requires that the Indian children remain in the custody of R.F. as the approved tribal placement. As a result, under ICWA, preadoptive placement preference must be given to R.F. Because the best-interests analysis in this case is controlled by the ICWA provision in Minn. Stat. § 260C.212, subd. 2(a), a provision which was not at issue in *M.L.S.*, the district court's analysis was not affected by the same error that caused us to reverse in *M.L.S.*

Here, the district court was required to adhere to ICWA and MIFPA to determine the best interests of the Indian children. *See* Minn. Stat. §§ 260C.212, subd. 2(a), 260.755, subd. 2a. MIFPA further provides that "[T]he best interests of an Indian child support the child's sense of belonging to family, extended family, and tribe. *The best interests of an Indian child are interwoven with the best interests of the Indian child's tribe.*" Minn. Stat. § 260.755, subd. 2a (emphasis added). Notably, in ICWA proceedings, the Indian child's tribe is automatically included as a party to the case. *See* Minn. R. Juv. Prot. P. 28.02. Here, Red Lake Nation is not only a party in this CHIPS proceeding, but they have expressed that it is in the Tribe's best interest for R.F. to retain custody of the Indian children. Because an Indian child's best interests are "interwoven" with the best interests of their Tribe, Red Lake Nation's preference for the Indian children to be placed with R.F. supports the district court's determination that it was also in the Indian children's best

interests to deny appellants' motion for permissive intervention. *See* Minn. Stat. § 260.755, subd. 2a.

Furthermore, contrary to appellants' assertion, the district court appropriately determined that allowing them to permissibly intervene would be contrary to the children's best interests. The district court explicitly stated that it "finds *intervention by the [appellants] would not be in the children's best interest for the reasons detailed above*," referring to its findings. (Emphasis added.) It made several factual findings pertinent to establishing the Indian children's best interests under ICWA and MIFPA, which in turn "bear[s] on" their best interests regarding appellant's permissive-intervention motion. *M.L.S.*, 964 N.W.2d at 457. Those findings include that: "[t]he best interests of an Indian child support the child's sense of belonging to family, extended family and tribe[;] [t]he best interests of an Indian child are interwoven with the best interests of the Indian child's tribe[,] Minn. Stat. § 260.755 subd.2a."; the children's Tribe, Red Lake Nation, disapproves of adoptive or permanent placement of the Indian children with appellants, who are not relatives, are not Indian, and are not members of the Tribe; Red Lake Nation approves of temporary placement of the Indian children with their relative R.F., during the pendency of the CHIPS proceeding because R.F. is Indian and a member of their Tribe, *see* 25 U.S.C. § 1915; R.F. also has custody of the Indian children's older sibling; the Indian children have transitioned well into R.F.'s home; R.F. is providing for the Indian children's medical needs;[4] and, while in the care of appellants, the children "did not attend

---

[4] In arguing that the district court should have granted appellants' motion for permissive intervention, appellants emphasize that they had helpful information regarding the Indian

a single tribal event," did not meet their older sister or other extended family, and did not enroll for membership with the Tribe. *See* 25 U.S.C. § 1915(b); Minn. Stat. § 260.755, subd. 2a. While appellants dispute the last finding, they cannot dispute that R.F., as the Indian children's relative and a tribal member, can bring the Indian children to the Tribe's events, have them meet their extended family, and assist in enrolling them in membership with the Tribe. Because the record supports the district court's determination that, under ICWA and MIFPA, the Indian children's best interests are already represented by Red Lake Nation, the district court did not commit a "clear abuse of discretion" by denying appellants' motion for permissive intervention in this preadoptive CHIPS proceeding. *M.L.S.*, 964 N.W.2d at 451.[5]

---

children's medical needs. But that information can and should have been provided by appellants, irrespective of their party status. Furthermore, that information could be obtained directly from the Indian children's healthcare providers. Finally, while appellants argue that the best-interests factors in Minn. Stat. § 260C.212, subd. 2(b), should not have been considered, it implicitly but extensively relies on "the medical needs of the child" factor to argue why they should be allowed to permissively intervene.

[5] Even under the traditional *M.L.S.* analysis for non-ICWA cases, the district court did not clearly abuse its discretion by denying appellants' permissive-intervention motion. Unlike in *M.L.S.*, 964 N.W.2d at 445-49, in which the appellant seeking permissive intervention in the adoption proceedings was an aunt of the child, movant-appellants are *not* related to the Indian children, whereas R.F. is a relative, *see* Minn. Stat. § 260C.212, subd. 2(a); R.F. has custody of the children's older sibling, *see Doren v. Doren*, 431 N.W.2d 558, 561 (Minn. App. 1988) (noting that "split custody of siblings is not favored"); *see also* Minn. Stat. § 260C.212, subd. 2(a)(1); and this is a CHIPS proceeding and not an adoption. The district court addressed the relevant best-interests-of-the-child factors through its findings that R.F. is providing for the Indian children's medical needs, they have adapted well to their new environment in R.F.'s home, placement with R.F. allows them to be better connected to their extended family and tribal community, and placement with R.F. ensures compliance with ICWA and MIFPA to preserve the Indian children's family, which is required under factor 11. *See* Minn. Stat. § 260C.212, subd. 2(b)(1-11). The district court properly exercised its discretion here. *See Valentine v. Lutz*, 512 N.W.2d 868, 871 (Minn. 1994) (concluding in non-ICWA CHIPS case that, although appellant foster parents had

**II.      The district court correctly determined that appellants are not interested third parties to the CHIPS proceeding.**

I also agree with Red Lake Nation's statutory analysis and would conclude that appellants are legally precluded from being considered "interested third part[ies]" under Minn. Stat. § 257C.01, subd. 3 (2022). That provision excludes "*an individual who has a child placed in the individual's care* . . . through a court order or voluntary placement under chapter 260C" from being considered as an interested third party. Minn. Stat. § 257C.01, subd. 3(b) (emphasis added). Here, it is undisputed that appellants had received temporary placement of the Indian children under chapter 260C (2022 & Supp. 2023).

"Statutory interpretation is a question of law that we review de novo." *Houck v. Houck*, 979 N.W.2d 907, 910 (Minn. App. 2022). "Our objective in statutory interpretation is to effectuate the intent[] of the legislature." *Id.* (Quotation omitted). If the legislature's intent is unambiguous and discernible from the statute's plain language, then the plain language controls. *Id.* Because "different tenses exist to express differences in the time or duration of an action," the "legislature's use of a verb tense is significant in construing statutes." *Hous. And Redev. Auth. of St. Cloud v. Royston*, 990 N.W.2d 730, 737 (Minn. App. 2023) (quotations omitted), *rev. denied* (Minn. Aug. 22, 2023).

Here, the statutory exclusion is phrased in the present-perfect tense. A sentence is in present-perfect tense when it uses a form of the auxiliary verb "to have" in combination with the past participle of the principal transitive verb. *See id.*; *State v. Overweg*, 922

provided child with excellent care for extended period, "the decision to allow persons to intervene other than those allowed by our rule or statute is one that should remain within the sound discretion of the [district] court").

N.W.2d 179, 184 (Minn. 2019); *The Chicago Manual of Style* § 5.132 (17th ed. 2017). When a sentence uses the present-perfect tense, it "denotes an act, state or condition [*that is now completed from a time in the indefinite past*," *Overweg*, 922 N.W.2d at 184 (quotation omitted) (emphasis added), or a "past action that comes up to and touches the present." *Chicago Manual of Style*, § 5.132.

The phrase "has a child placed" in subdivision 3(b) uses the auxiliary verb "has" to modify "placed," which is the past participle of the principal transitive verb. Because the statutory exclusion uses the present-perfect tense, the condition it imposes, placement under chapter 260C, applies whether the placement occurred and was completed in the indefinite past or if it "comes up to and touches the present." *Chicago Manual of Style*, § 5.132. The statute's use of the present-perfect tense in this case therefore signifies that, because the children were placed with appellants under chapter 260C, they are precluded from being considered an "interested third party" under Minn. Stat. § 257C.01, subd. 3. *See State v. S.A.M.*, 891 N.W.2d 602, 606 (Minn. 2017) (noting that operative language "has convictions" required court to look to present status of conviction, while statute that took effect when defendant "has been convicted" referred to past time periods); *Overweg*, 922 N.W.2d at 184 (supreme court noting that statutory phrase "has previously been convicted" was conjugated in present-perfect tense, meaning qualifying conviction could have occurred sometime in indefinite past); *see also Barrett v. United States*, 423 U.S. 212, 217 (1976) (noting that, when interpreting statutes, "who is" denotes present tense while "who has" signifies present-perfect tense). The fact that the two verbs "has" and "placed" are not directly adjacent to each other does not affect the analysis. *See S.A.M.*, 891 N.W.2d

at 606 (auxiliary verb "has" separated from transitive verb "convicted" by word "been"); *Overweg*, 922 N.W.2d at 184 (supreme court concluding that auxiliary verb "has" separated from transitive verb "convicted" by words "previously been" is not ambiguous). This interpretation that the phrase "has a child placed" is in the present-perfect tense is consistent with binding caselaw, follows the rules of grammar, and makes logical sense.

Furthermore, reading the 'interested third party' provision in the present-perfect tense would not make 'the individual' the subject of the sentence, as the majority suggests. That is because the provision is written in the passive voice to omit the subject, which is *the agency* placing the child with the individual. In other words, the individual is *not* the subject of the sentence, but rather is the recipient of the agency's action, as shown by the language in the last phrase of the provision "placed in the individuals' care." Minn. Stat. § 257C.01, subd. 3(b).

Finally, appellants' position that the exclusion speaks in the present tense when it refers to "an individual who has a child placed in the individual's care" does not comport with the grammatical structure of the statute's plain language. Under chapter 260C, adopting appellants' position that "has" is the principal transitive verb would create an ambiguity because the individual in the phrase "an individual who has a child" could refer to either the birth parent or the person who receives custody of a child.

Notably, this interpretation is also consistent with the language in Minn. Stat. § 260C.212, subd. 2(a)(2), which establishes the right for foster parents who no longer have custody of a child to be considered as a placement option. That provision provides that, if there is no relative available for placement, the child "shall" be placed "with an individual

who is an important friend of the child or of the child's parent or custodian, including an individual *with whom the child has resided* or had significant contact." Minn. Stat. § 260C.212, subd. 2(a)(2) (emphasis added). Just like the interested-third-party statute, the best-interests-of-the-child provision for former foster parents uses the present-perfect construction "has resided" to indicate that the condition it imposes can be satisfied whether it occurred in the indefinite past or comes up to and touches the present. *See Overweg*, 922 N.W.2d at 184 (quotation omitted); *Chicago Manual of Style*, § 5.132.

Even if I were to assume without deciding that the language in Minn. Stat. § 257C.01, subd. 3, is ambiguous, the canons of statutory construction lend further support to the conclusion that appellants are excluded from being considered interested third parties.

When interpreting a statute, appellate courts should attempt to effectuate the legislature's intent by avoiding an interpretation that would lead to "absurd results and unjust consequences." *Am. Fam. Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277-78 (Minn. 2000). Further, appellate courts should read and construe statutory provisions in light of "surrounding sections to avoid conflicting interpretations." *Id.* at 277.

Appellants' interpretation would lead to the absurd result that only former foster parents, and not current foster parents who still have custody of the child, could be considered interested third parties under Minn. Stat. § 257C.01, subd. 3. I cannot conceive of a rational explanation for why the legislature would have intended that inconsistent result. To the contrary, it seems evident that the legislature intended to exclude both current and former foster parents from being interested third parties to prevent foster parents from

increasing the adversarial nature of CHIPS proceedings by filing third-party-custody petitions, when the goal of CHIPS proceedings is to reunite the children with their parents. *See* Minn. Stat. § 260C.001, subd. 2(b)(7).

Furthermore, interpreting Minn. Stat. § 257C.01, subd. 3, to exclude former foster parents of Indian children is consistent with the Minnesota statutes that give express supremacy to ICWA and MIFPA in CHIPS and third-party custody proceedings. *See* Minn. Stat. § 260.755, subd. 2a (stating that an Indian child's best interests must be determined according to ICWA and MIFPA in juvenile-protection cases); Minn. Stat. § 257C.02 (noting that ICWA and MIFPA govern third-party custody proceedings involving Indian children and supplant conflicting state law provisions). Because the Indian children were already in the custody of R.F., their preferred temporary placement under ICWA and MIFPA in a CHIPS proceeding, the district court's determination that appellants were not interested third parties comports with the Minnesota statutes giving deference to ICWA and MIFPA in CHIPS and third-party custody proceedings involving Indian children.

Because the plain language of Minn. Stat. § 257C.01, subd. 3, and the canons of statutory interpretation demonstrate that the legislature intended for the chapter 260C exclusion to apply even if the moving party no longer had custody of the child, I would conclude that the district court appropriately determined that appellants were not an interested party and thus are not eligible to request intervention on that basis.

**III.    The district court did not err by determining that appellants do not satisfy a good-cause exception to ICWA or MIFPA.**

I concur with the majority that the district court did not err in its determination that appellants failed to satisfy a good-cause exception to ICWA and MIFPA.

**IV.    Appellants' challenge to ICWA and MIFPA is not properly before this court, they lack standing, and their challenge fails under the rational-basis test.**

Appellants sought a declaratory judgment that ICWA and MIFPA violate their equal-protection rights under the U.S. Constitution based on the premise that the placement preferences expressed by those statutes *racially* discriminate against them as non-Indians. Because I would conclude that the district court appropriately denied both appellants' motion for permissive intervention and their motion to be added to the case as interested third parties, I would also conclude that it is not necessary to reach the constitutional issue. *Kimberly-Clark Corp. v. Comm'r of Revenue*, 880 N.W.2d 844, 849 (Minn. 2016) (noting that appellate courts "do not reach constitutional issues if the appeal can be resolved on other grounds").

Moreover, I would conclude that appellants' equal-protection claim has not been preserved for review and that this is not that rare case in which we should decide it for the first time on appeal. In addition, appellants lack standing to challenge ICWA and MIFPA based on the three-part test adopted by the Minnesota Supreme Court. Finally, to the extent that we even need to reach the merits of appellants' constitutional challenge, I concur with the majority's conclusion that MIFPA must be analyzed under the rational-basis test, which it undisputedly meets. I address each issue in turn.

**A.    Appellants' constitutional challenge has not been preserved for appellate review.**

The GAL and Red Lake Nation argue that appellants' constitutional challenge to ICWA and MIFPA are not properly before us because the parties did not brief or argue it to the district court, nor did the district court decide the issue.  I agree.

It is well-settled law that "[a] reviewing court must generally consider only those issues that the record shows were presented [to] and *considered by* the trial court in deciding the matter before it."  *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (emphasis added) (quotation omitted).  In other words, even when the parties raise an issue before the district court, appellate courts will not consider the issue if the district court did not address it.  *Stone v. Invitation Homes, Inc.*, 986 N.W.2d 237, 245 (Minn. App. 2023) (citing *Thiele*, 425 N.W.2d at 582), *aff'd*, 4 N.W.3d 489 (Minn. 2024).  Moreover, appellate courts generally decline to address constitutional issues not decided below.  *Cf. In re C.L.L.*, 310 N.W.2d 555, 557 (Minn. 1981) (refusing to consider important constitutional challenges to involuntary-termination order because arguments were not raised in district court); *Constans v. Comm'r of Pub. Safety*, 835 N.W.2d 518, 526 (Minn. App. 2013) ("We generally do not address constitutional issues raised for the first time on appeal.").

To preserve a constitutional challenge for appellate review, the party bringing the challenge must both raise the issue before the district court *and* sufficiently develop the record on that issue to allow an appellate court to evaluate the merits of the claim.  *See Erickson v. Fullerton*, 619 N.W.2d 204, 208 (Minn. App. 2000) ("But we decline to review this constitutional challenge because it was neither adequately raised nor considered in the

district court and the appellate record is insufficient for review."); *State v. Odenbrett*, 349 N.W.2d 265, 269 (Minn. 1984) ("We decline, therefore, to address this [due-process claim] when it was neither adequately raised nor considered below, and where, apparently because it was not raised below, the record inadequately presents the issue.").

This is not the rare occasion in which we should review appellants' constitutional challenge under the "interest of justice" exception in Minn. R. Civ. App. P. 103.04.[6] "Appellate courts have a *limited ability* to address issues not properly preserved for appeal." *Roth v. Weir*, 690 N.W.2d 410, 413 (Minn. App. 2005) (emphasis added). Only on "rare occasions" have appellate courts invoked rule 103.04 to allow a party to proceed on an otherwise unpreserved legal argument. *Id.* (quoting *Cohen v. Cowles Media Co.*, 479 N.W.2d 387, 390 (Minn. 1992)). Factors favoring review under the "interests of justice" exception include: "the issue is a novel legal issue of first impression; the issue was raised prominently in briefing; the issue was 'implicit in' or 'closely akin to' the arguments below; and the issue is not dependent on any new or controverted facts." *Id.* at 413-14 (quoting *Watson*, 566 N.W.2d at 687-88). Further, the exception is generally reserved for situations in which "there is no possible advantage or disadvantage to either party in not having had a prior ruling by the trial court on the question." *Miller v. Soo Line R.R. Co.*, 925 N.W.2d 642, 653 (Minn. App. 2019) (quotation omitted).

---

[6] Notably, appellants do not argue that we should review their constitutional challenge under the "interest of justice" exception, even though the district court did not rule on their claim. The caselaw cited by the majority makes clear that they rely on this exception to review the issue. *See, e.g., Watson v. United Servs. Auto. Ass'n*, 566 N.W.2d 683, 687-88 (Minn. 1997) (accepting review under rule 103.04).

C/D-15

Several factors show that this case is not suitable for review under rule 103.04. An equal-protection challenge to ICWA on the basis of race is not a "novel" issue of first impression, *see, e.g.*, *Morton*, 417 U.S. at 553-54, the constitutional issues are not "implicit in" or "closely akin to" appellants' motions to intervene in the CHIPS proceeding, and the constitutional issues were not "prominently" raised in the parties' briefing. *See Roth*, 690 N.W.2d at 413-14. The only constitutional argument presented to the district court was within the memorandum that appellants filed less than a day before the hearing on their motions for permissive intervention and third-party custody. As a result, none of the remaining parties had the time to brief the constitutional issues before the district court and the parties did not argue the issues before the district court. Considering the lack of full briefing by the parties, it is not surprising that the district court did not make any express findings of fact or conclusions of law on the constitutionality of either ICWA or MIFPA. *Contra Miller*, 925 N.W.2d at 653 ("Here, the issue was fully briefed by the parties in district court and on appeal.").

Additionally, all of the parties and this court would have benefitted from the opportunity to develop the record on the constitutional issues before the district court by providing more comprehensive briefing and arguments on the legal questions. For example, whether appellants had standing to challenge the constitutionality of ICWA or MIFPA is a dispositive threshold question that appellants failed to address in the district court or in their principal brief on appeal. Furthermore, neither party had the opportunity to argue the constitutionality of ICWA and MIFPA under the rational-basis test before the district court, which I agree with the majority is the appropriate review standard for this

C/D-16

case. Because all of the parties, and ultimately this court, would have benefitted by having the chance to fully litigate and develop the record on all of the issues inherent within appellants' constitutional challenge before the district court, this case is ill-suited for review under rule 103.04. *See Miller*, 925 N.W.2d at 653. As it stands, the complete lack of a substantive record with respect to appellants' constitutional challenge precludes our review. *See Erickson*, 619 N.W.2d at 208; *Odenbrett*, 349 N.W.2d at 269; *Lewis-Miller v. Ross*, 710 N.W.2d 565, 570 (Minn. 2006) (supreme court declining to address issue "neither litigated below nor passed on by the district court").

The majority contends that we should review appellants' constitutional challenge because it could be dispositive of the entire appeal on the merits. However, even if ICWA and MIFPA did not govern the Indian children's placement, Minnesota law expresses a preference for children to be placed with relatives and with their siblings, preferences which would also dictate that the Indian children be placed with R.F. *See* Minn. Stat. §§ 260C.221, subd. 4 (2022) ("The responsible social services agency shall consider placing a child with a relative . . . ."); 260C.212, subd. 2(d) ("Siblings should be placed together for foster care and adoption at the earliest possible time . . . ."). It is therefore doubtful that resolving appellants' constitutional questions would decide the remaining issues on the merits.

The majority also argues that the posture of this case as a CHIPS proceeding justifies invoking the "interests of justice" exception to expedite the proceedings. But as the district court found, here the Indian children are currently safely residing with their relative, R.F. *See In re Welfare of A.M.C.*, 920 N.W.2d 648, 661 (Minn. App. 2018) (concluding that

reversal would not advance child's best interests by further delaying "safe and permanent placement"). Additionally, R.F. has first priority for custody of the Indian children under the preferences expressed by ICWA and MIFPA and, as the majority concludes, there are no good-cause exceptions to those preferences in appellants' case. Minn. Stat. § 260C.212, subd. 2(a); Minn. R. Juv. Prot. P. 28.04, subd. 5; 25 U.S.C. § 1915(a). I would therefore conclude that this is not the "rare occasion[]" in which we should decide an otherwise unpreserved argument for the first time on appeal. *Roth*, 690 N.W.2d at 413 (quotation omitted); *see Odenbrett*, 349 N.W.2d at 269; *Erickson*, 619 N.W.2d at 208.

**B.      Appellants lack standing to challenge ICWA and MIFPA.**

Red Lake Nation argues that appellants' status as non-relative, former foster parents is insufficient to provide them with standing to challenge the constitutionality of ICWA and MIFPA in a CHIPS proceeding. Their argument has merit.

Minnesota caselaw has adopted the federal test under Article III to determine if a party has standing to bring a constitutional challenge, which requires that party to show: (1) an injury-in-fact; (2) a causal connection between the injury and conduct; and (3) that the injury is one that can likely be redressed by the court. *See In re Custody of D.T.R.*, 796 N.W.2d 509, 512 (Minn. 2011) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "To demonstrate an injury-in-fact, the plaintiff must show a concrete and particularized invasion of a legally protected interest." *Garcia-Mendoza v. 2003 Chevy Tahoe*, 852 N.W.2d 659, 663 (Minn. 2014) (quotation omitted). "The injury . . . must be immediate, and not a possible, remote consequence, or mere possibility arising from some unknown or future contingency." *D.T.R.*, 796 N.W.2d at 513 (quotation omitted).

C/D-18

"Moreover, the injury must be fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Garcia-Mendoza*, 852 N.W.2d at 663.

Here, appellants cannot show an injury-in-fact. They are former foster parents who seek to intervene in a CHIPS proceeding. Unlike an adoption proceeding, "a CHIPS proceeding [is] not a permanency proceeding." *In re Welfare of Children of R.M.B.*, 735 N.W.2d 348, 352 (Minn. App. 2007), *rev. denied* (Minn. Sept. 26, 2007). Appellants contend that they have suffered an injury-in-fact because ICWA and MIFPA have deprived them of the opportunity to seek permanent placement of the Indian children with them. However, obtaining permanent placement is not a possible outcome of a preadoptive CHIPS proceeding, and, as a result, appellants' "injury" is too hypothetical to confer standing. *See D.T.R.*, 796 N.W.2d at 513; Minn. Stat. § 260C.201 (defining all potential dispositions that district courts may order in CHIPS matters).

Appellants argue that, because they have alleged that ICWA and MIFPA discriminated against them on the basis of race, *Haaland v. Brackeen*, 143 S.Ct. 1609 (2023), provides that they have suffered a cognizable Article III injury. This argument fails for two reasons. First, appellants' position ignores the salient fact that the three underlying cases appealed in *Brackeen*, including one that originated in Minnesota, involved adoption proceedings, not CHIPS proceedings. 143 S.Ct. at 1625-26. This distinction is significant because parties to an adoptive-placement proceeding have a more colorable claim of an injury considering that adoption cases take place after parental rights have been terminated and the parties are seeking to adopt the children. Conversely, the

goal of a CHIPS proceedings is to reunite the children with their parents. *See* Minn. Stat. § 260C.001, subd. 2(b)(7).

Second, *merely alleging* racial discrimination by itself does not confer Article III standing to challenge ICWA or MIFPA because the Supreme Court has previously concluded that "Indian" is not a racial classification, but a political term that recognizes Indian Tribes' status as sovereign nations. *Morton*, 417 U.S. at 553-54. Indeed, the majority acknowledges that Indians are not a racial classification in its conclusion that the rational-basis test applies to appellants' constitutional challenge, a conclusion with which I agree. Yet the majority concludes that appellants' mere allegations of racial discrimination alone are somehow sufficient to confer standing. It is patently illogical to provide Article III standing solely on the basis of a non-existent racial classification. To the contrary, it is inconsistent with the three-part test adopted by the Minnesota Supreme Court. *D.T.R.*, 796 N.W.2d at 512. Because appellants cannot show a legally protected interest, and no "concrete and particularized invasion" of that interest, their claim of an injury-in-fact fails. *See Garcia-Mendoza*, 852 N.W.2d at 663.

Appellants also cannot show redressability by this court. As noted above, it is evident from the record that appellants' ultimate goal is to adopt the Indian children. Even if this court were to remand this CHIPS case for further proceedings, given our conclusion that no good-cause exception exists to ICWA and MIFPA's placement preferences, there is no outcome of the case that would result in appellants adopting the Indian children. *See* Minn. Stat. § 260C.201.

In sum, these former foster parent appellants who seek adoption of the Indian children, despite the fact that they are non-relatives, non-Tribal members, and do not have custody of any of the Indian children's siblings, cannot show that they have standing to challenge ICWA and MIFPA in this CHIPS proceeding. This court therefore lacks jurisdiction to address this issue.

### C. To the extent that this court addresses the constitutionality of MIFPA, I concur that the rational-basis test applies to MIFPA and it clearly meets that test.

Appellants argue that both ICWA and MIFPA are unconstitutional under the strict-scrutiny test because they violate the Equal Protection Clause by imposing race-based preferences. I concur with the majority's conclusion that the rational-basis test applies to appellants' constitutional challenge to MIFPA. *See Morton*, 417 U.S. at 553-54. Because appellants do not make any argument as to whether MIFPA meets the rational-basis test, they have waived their argument. *See In re Application of Olson for Payment of Servs.*, 648 N.W.2d 226, 228 (Minn. 2002) ("It is axiomatic that issues not 'argued' in the briefs are deemed waived on appeal."). Nevertheless, I agree with the majority that MIFPA clearly meets the rational-basis test.

In conclusion, I commend appellants for the care they provided the Indian children after they had the children temporarily placed in their care. Nevertheless, I would first conclude that the district court did not commit a "clear abuse of discretion," *M.L.S.*, 964 N.W.2d at 451, by denying appellants' motion for permissive intervention. Minnesota law required the district court to apply ICWA and MIFPA to this preadoptive CHIPS proceeding, Minn. Stat. § 260C.212, subd. 2(a); Minn. R. Juv. Prot. P. 28.05; Minn. Stat.

§ 260.755, subd. 2a, and under ICWA and MIFPA, the Indian children's best interests are already represented in this case by Red Lake Nation. *See* Minn. Stat. § 260.755, subd. 2a ("The best interests of an Indian child are interwoven with the best interests of the Indian child's tribe."). Second, I would conclude that appellants do not qualify as "interested third part[ies]" under Minn. Stat. § 257C.01, subd. 3(a), because, under the plain language of subdivision 3(b), they are excluded as "an individual who has a child placed in the individual's care" under chapter 260C, which is written in the present-perfect tense. *See Overweg*, 922 N.W.2d at 184; *Chicago Manual of Style*, § 5.132.

As to appellants' assertions that ICWA and MIFPA violate their equal-protection rights, I would first conclude that this court does not need to decide these constitutional challenges based on my conclusions to the first two issues raised by appellants. *See Kimberly-Clark Corp.*, 880 N.W.2d at 849. Second, I would conclude that appellants' constitutional challenge is not properly preserved for appellate review. It is well-settled that we do not address constitutional issues that, as here, were not briefed by all interested parties, were not argued before the district court, and were not decided by the district court. *See Erickson*, 619 N.W.2d at 208; *Odenbrett*, 349 N.W.2d at 269; *Thiele*, 425 N.W.2d at 582. Nor is this that "rare occasion[]" in which we need to decide this issue. *Roth*, 690 N.W.2d at 413 (quotation omitted). Third, I would conclude that appellants lack standing to challenge the constitutionality of ICWA and MIFPA because they are former foster parents who seek permanent custody of the Indian children, an outcome which is not possible in a preadoptive CHIPS proceeding. *See R.M.B.*, 735 N.W.2d at 352; Minn. Stat.

§ 260C.201.  Appellants therefore cannot show either an injury-in-fact or redressability. *D.T.R.*, 796 N.W.2d at 512.

I concur with the majority that appellants have failed to show that they meet a good-cause exception to MIFPA's placement preferences.  I further concur with the majority that, to the extent that we need to reach the constitutional issues, MIFPA must be analyzed under the rational-basis test because its placement preferences are based on membership in an Indian Tribe and are not based on race.  Indeed, MIFPA recognizes that "Indian children are the future of the Tribes and are vital to their very existence."  Minn. Stat. § 260.753 (2023).  As a result, MIFPA's laudable goals of keeping Indian children with their Tribe and of promoting Indian self-government do not violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.